IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

VOLKSWAGEN GROUP OF AMERICA,
INC.,

               Plaintiff,

    v.

THE UNINCORPORATED
ASSOCIATIONS IDENTIFIED IN
SCHDULE A,

           Defendants.

Civil No. 1:19-cv-01574-AJT-MSN

## REPORT & RECOMMENDATION

This matter comes before the Court on the motion for entry of default judgment (Dkt. No. 58) filed by Volkswagen Group of America ("Volkswagen"). Having reviewed the record and the pleadings, the undersigned Magistrate Judge recommends entering default judgment in plaintiff's favor for the reasons that follow.

## I.    Procedural Background

On December 13, 2019, plaintiff filed a complaint against the unincorporated associations identified in schedule A to the complaint (collectively, "defendants") alleging various claims of trademark infringement based on defendants' unauthorized use of counterfeit imitations of plaintiff's federally-registered trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods (Dkt. No. 1). Specifically, the complaint alleges three counts against defendants, including: Trademark Infringement and Counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114, for "selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions" of plaintiff's trademarks

without plaintiff's permission," Compl. (Dkt. No. 1) ¶¶ 44-54; False Designation of Origin under Section 43 of the Lanham Act, 15 U.S.C. § 1125(a), for "promotion, marketing, offering for sale, and sale" of counterfeit reproductions of plaintiff's trademarks that created a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with plaintiff or the origin, sponsorship, or approval of defendants' counterfeit products, *id.* at ¶¶ 51-55; and Trademark Dilution under Section 43 of the Lanham Act, 15 U.S.C. § 1125(c), for willfully and intentionally using plaintiff's trademarks in connection with the advertisement, promotion, and sale of defendants' products, *id.* at ¶¶ 56-65.

In the complaint, plaintiff seeks the following relief: an order temporarily, preliminarily, and permanently enjoining and restraining defendants from engaging in their alleged unlawful conduct, *id.* at A; an order requiring third-parties in privity with defendants—including online marketplace platforms, web hosts, sponsored search engines or ad-word providers, credit cards, banks, merchant account providers, payment processing service providers, and internet search engines—to disable and cease providing services being used by defendants to engage in the sale of goods using plaintiff's trademarks and displaying any advertisements used by defendants in connection with the sale of counterfeit and infringing goods using plaintiff's trademarks, *id.* at B; an order requiring defendants to account for, or to pay plaintiff, all profits realized by defendants arising from their unlawful conduct and that the amount of damages for infringing plaintiff's trademarks be increased by a sum not exceeding three times the amount as provided under 15 U.S.C. § 1117, *id.* at C; in the alternative, an award of statutory damages for willful trademark counterfeiting under 15 U.S.C. § 1117(c)(2) of $2,000,000.00 for each and every use of plaintiff's trademarks, *id.* at D; and an award for reasonable attorneys' fees and costs, *id.* at E, among other relief the Court deems just and proper, *id.* at F.

On December 13, 2019, plaintiff filed an *ex parte* motion for a temporary retraining order ("TRO") freezing the assets of defendants' PayPal accounts, restraining and enjoining the transfer of any monies held in such accounts, and permitting limited expedited discovery directed to PayPal and eBay to determine defendants' identities, the amount and location of the profits of defendants' counterfeiting and infringement, and the scope of defendants' activities (Dkt. No. 10). The Court granted plaintiff's motion on December 20, 2019 (Dkt. No. 26). On January 14, 2020, plaintiff filed a motion to convert the TRO into a preliminary injunction (Dkt. No. 30). The Court denied the motion on January 17, 2020 (Dkt. No. 40), directing plaintiff to re-notice the motion once defendants had been notified of the action.

On January 15, 2020, plaintiff filed a motion for service of publication by email because plaintiff was unable to determine defendants' identities and actual physical locations due to defendants actively concealing their real identities and physical addresses (Dkt. No. 34); however, plaintiff verified that defendants conduct foreign business via known email addresses and requested to serve defendants via those email addresses, *id.* The Court granted plaintiff's motion on January 16, 2020 (Dkt. No. 39). On January 22, 2020, plaintiff filed a notice of service of defendants by email stating that plaintiff emailed defendants a copy of the complaint, the individual defendant's summons, and the Court's January 16, 2020 order to all defendants. (Dkt. No. 44) 1.

On January 17, 2020, plaintiff filed notices of dismissal seeking to dismiss some 82 defendants without prejudice, the complete list of which can be found in docket entry 42. The Court granted the notice on January 24, 2020 (Dkt. No. 45). On January 23, 2020, after successfully serving defendants, plaintiff renewed its request for a preliminary injunction. On January 31, 2020, the Court granted plaintiff's request. (Dkt. No. 53).

3

On February 26, 2020, plaintiff filed a request for clerk's entry of default (Dkt. No. 54), which the Clerk of Court entered on February 26, 2020 (Dkt. No. 57). On March 13, 2020, plaintiff filed a motion for entry of default judgment (Dkt. No. 58), along with a memorandum in support of plaintiff's motion for entry of default judgment (Dkt. No. 59) and notice of hearing for March 20, 2020 (Dkt. No. 60), against the remaining defendants. *See* Appendix A (listing defendants). Specifically, plaintiff seeks an order permanently enjoining defendants from making, using, selling or offering for sale unauthorized products containing plaintiff's trademarks, Pls. Proposed Order (Dkt. No. 58-1) 1; a monetary judgment of $2,000,00.00 per mark infringed for infringing plaintiff's trademarks, *id.*; an order requiring PayPal to release plaintiff's monies currently restrained in defendants' financial accounts as partial payment of the monetary judgment, *id.* at 1-2; and an order that until plaintiff has recovered full payments of the monetary judgment, plaintiff shall have an ongoing authority to serve a court order on PayPal in the event that any new accounts controlled or operated by defendants are opened, among other instructions *id.* at 2. On April 23, 2020, the Court ruled that due to the Covid-19 pandemic, no hearing on the motion for default judgement would be held. Instead, the Court gave objectors a period of three weeks in which to lodge any objection with the Clerk's Office. Subsequently, on May 15, 2020, defendant Yuting Hu filed an opposition to the motion for default. (Dkt. No. 68). On May 28, 2020, plaintiff filed a response to defendant Hu's opposition. (Dkt. No. 75). Subsequently, plaintiff and defendant Hu reached a settlement, and defendant Hu was dismissed from the action on June 12, 2020. No other claimant has filed an objection of behalf of defendants. Accordingly, the motion for default judgment is ripe for disposition.

## II.    Factual Background

Volkswagen Group of America is a corporation organized under New Jersey law with a principal place of business in Herndon, Virginia. Compl. (Dkt. No. 1) ¶¶ 5. Under agreement with

Audi, VW, Bentley, and Lamborghini, Volkswagen Group of America polices, enforces, and promotes the VW Brands' trademarks in the United States. Audi, VW, Bentley, and Lamborghini are prominent automobile manufacturers that sells automobiles, genuine parts, and accessories through a network of licensed dealerships throughout the United States. *Id.* at ¶ 8. These brands are among the most well-recognized brands in the world. *Id.* at ¶ 9.

Plaintiff and associated VW brands own numerous federally-registered trademarks for automobiles, parts, accessories, and a long list of related services and merchandise (the "trademarks"). *Id.* at ¶ 10. The trademarks are valid, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. *Id.* at ¶ 11. VW Brands incorporates these distinctive trademarks in the design of its vehicles, vehicle parts, and vehicle accessories. *Id.* VW Brands spends millions of dollars in advertising, promoting, and developing plaintiff's trademarks and trade dress throughout the world. *Id.* at ¶ 15. Due to such advertising expenditures and significant sales VW Brands' products in the United States and internationally, plaintiff's trademarks have come to symbolize the brands' marketability and reputation. *Id.* at ¶¶ 11, 16.

Defendants are individuals and business entities who, on information and belief, reside in China and elsewhere outside the United States. *Id.* at ¶ 26. Defendants have gone to great lengths to conceal their identities and often use multiple fictitious names, business names, and addresses to register and operate their network of internet stores. *Id.* at ¶¶ 26, 27. Defendants further attempt to conceal their identity by regularly creating new websites and online marketplace accounts on various platforms as well as other unknown fictitious names and addresses. *Id.* at ¶ 34. Defendants operate in online marketplaces by selling thousands of counterfeit goods bearing plaintiff's trademarks at substantially lower prices than genuine products. *Id.* at ¶¶ 26. Many of defendants' counterfeit goods were stamped with genuine product numbers and the online listings stated the goods were intended to fit original automobiles. *Id.* at ¶ 26. Plaintiff reviewed the offerings from

each of defendants' internet stores and confirmed that defendants were in fact selling counterfeit VW brand products. *Id.* at ¶ 29.

Defendants facilitate their sales by designing internet stores that appear to be authorized online retailers, outlet stores, or wholesalers. *Id.* at ¶ 34. Defendants "further perpetuate the illusion of legitimacy by purporting to offer 'customer service' and using indicia of authenticity and security that consumers have come to associate with retailers, including the Visa®, MasterCard®, and/or PayPal® logos." *Id.* Defendants also deceive consumers by using plaintiff's trademarks without authorization within the content, text, and/or meta tags of their websites to attract various search engines looking for websites relevant to consumer searches for VW Brands products. *Id.* at ¶ 34. Moreover, defendants use plaintiff's trademarks in product images while using strategic item titles and descriptions that will trigger their listings when consumers are searching for VW Brands products. *Id.* Accordingly, defendants, without any authorization or license from plaintiff, have knowingly and willfully used and continue to use plaintiff's trademarks in connection with the advertisement, distribution, offering for sale, and sale of counterfeit VW Brands products into the United States and over the internet. *Id.* at ¶ 39. Defendants' conduct is likely to cause "confusion, mistake, and deception by and among consumers" and irreparably harmed plaintiff. *Id.* at ¶ 40.

## III. Jurisdiction, Venue, and Service of Process

A court must have both subject matter and personal jurisdiction over a defaulting defendant before it can render a default judgment. The court has original subject matter jurisdiction under 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331, 1338(a)-(b) because this action arises under federal law, the Lanham Act. Because defendants' contacts to Virginia are also the basis for the civil action, specific personal jurisdiction is the appropriate standard. *See ALS Scan, Inc. v. Dig. Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002). In determining specific jurisdiction, courts

consider "(1) the extent to which the defendant 'purposefully avail[ed]' itself of the privilege of conducting activities in the State; (2) whether the plaintiff's claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *Id.* (internal citations omitted).

Defendants satisfy each of these factors to establish specific personal jurisdiction. First, defendants purposefully availed themselves of conducting business in Virginia by seeking to do business with Virginia's residents through operating one or more commercial internet stores in which Virginia residents can purchase counterfeit products, targeting sales towards Virginia residents by operating online stores that offer shipping to the state, and accepting payment in U.S. dollars. *See* Compl. (Dkt. No. 1) ¶ 4. Second, this civil action arises directly from defendants' unauthorized and unlicensed sales of counterfeit products directed at Virginia. *Id.* at ¶¶ 23-24. Lastly, this Court's exercise of personal jurisdiction over defendants would be constitutionally reasonable. *See, e.g.*, *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980) (determining what is constitutionally reasonably by looking at the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, and the interstate judicial system's interest in obtaining the most effective resolution of controversies). Based on the record, there is no burden on defendants to litigate in this court given that the majority of them did not even respond to the complaint. Moreover, this court has an interest in adjudicating the dispute because courts have a "valid interest in the resolution of the grievances of its citizens and businesses…." *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 297 (4th Cir. 2009). Because defendants have engaged in such conduct towards this judicial district, venue is also proper pursuant to 28 U.S.C. § 1391.

Plaintiff has properly effectuated service on defendants. On January 15, 2020 plaintiff filed a motion for an order authorizing service of process by email after plaintiff verified that defendants conduct foreign business via known email addresses (Dkt. No. 34), which the Court granted on January 16, 2020 (Dkt. No. 39). On January 22, 2020 plaintiff emailed defendants the verified complaint, the individual defendant's summons, and the Court's January 16, 2020 order in each service email. Monica R. Talley Declr. (Dkt. No. 55) ¶¶ 1-4.

## IV.    Standard

Default judgment is appropriate if the well-pleaded allegations of the complaint establish that the plaintiff is entitled to relief, and the defendant has failed to plead or defend within the time frame set out in the rules. Fed. R. Civ. P. 55; *see also Agri-Supply Co. v. Agrisupply.com*, 457 F. Supp. 2d 660, 662 (E.D. Va. 2006). By defaulting, the defendant admits the plaintiff's well-pleaded allegations of fact, which then provide the basis for judgment. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)); *Partington v. Am. Int'l Specialty Lines Ins. Co.*, 443 F.3d 334, 341 (4th Cir. 2006). Nevertheless, "'[a] court confronted with a motion for default judgment is required to exercise sound judicial discretion in determining whether the judgment should be entered, and the moving party is not entitled to default judgment as a matter of right.'" *ReadyCap Lending, LLC v. Servicemaster Prof'l Cleaning, Inc.*, 2016 WL 1714877, at *2 (E.D. Va. Apr. 12, 2016) (quoting *EMI April Music, Inc. v. White*, 618 F. Supp. 2d 497, 505 (E.D. Va. 2009)). Here, because defendants have not answered or otherwise timely responded, the well-pleaded allegations of fact in the complaint are deemed to be admitted.

## V.    Analysis

Having examined the record, the undersigned finds that the well-pleaded allegations of fact in the complaint (Dkt. No. 1), supported by plaintiff's motion for entry of default judgment (Dkt. No. 58) and memorandum in support of plaintiff's motion for entry of default judgment (Dkt. No. 59), establish that defendants violated Section 32 of the Lanham Act, 15 U.S.C. § 1114 and Section 43 of the Lanham Act, 15 U.S.C. §§ 1125(a), (c).

### A.    Plaintiff's Claims for Trademark Infringement and Counterfeiting (Count I)

Plaintiff alleges that defendants committed Trademark Infringement and Counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114, for "selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions" of plaintiff's trademarks without plaintiff's permission. Compl. (Dkt. No. 1) ¶¶ 36-42. To prove trademark infringement, plaintiff must show "(1) that [they] own[] a valid and protectable mark; (2) that [defendants'] use[] a re-production, counterfeit, copy, or colorable imitation of that mark in commerce and without [plaintiff's] consent; and (3) that [defendants'] use is likely to cause confusion." *Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252, 259 (4th Cir. 2007) (internal citations omitted).

First, plaintiff is the owners of numerous federally-registered trademarks for automobiles, parts, accessories, and a long list of related services and merchandise. Compl. (Dkt. No. 1) ¶ 10. *See also* discussion *supra* p. 5. The registrations of plaintiff's trademarks constitute *prima facie* evidence of their validity and of plaintiff's right to use the trademarks pursuant to 15 U.S.C. § 1057(b). *Id.*

Second, defendants were selling counterfeits of plaintiff's products in commerce without plaintiff's consent. In the complaint, plaintiff alleges that defendants were selling these counterfeit

goods by the thousands, and the goods were priced at substantially lower prices than genuine products. Many of the goods appeared to be stamped with genuine product numbers, and the online listings stated the goods were intended to fit original car automobiles. Compl. (Dkt. No. 1) ¶ 20. Plaintiff inspected the offerings from each of defendant's internet stores to determine their authenticity and found that the products were nothing more than cheap, low quality imitations of genuine products. *Id.* at ¶ 24. Moreover, plaintiff has not licensed or authorized defendants to use any of their trademarks, and defendants are not authorized retailers of genuine products. *Id.* at ¶ 25.

Now that plaintiff has established that it owns valid and protectable trademarks and that defendants produced counterfeit products without its consent, the last factor is whether defendants' use of plaintiff's trademarks is likely to cause confusion. The Fourth Circuit established a list of seven non-exclusive factors to consider when determining if a product creates a likelihood of confusion: "(1) the strength or distinctiveness of the mark; (2) the similarity of the two marks; (3) the similarity of the goods/services the marks identify; (4) the similarity of the facilities the two parties use in their businesses; (5) the similarity of the advertising used by the two parties; (6) the defendant's intent; and (7) actual confusion." *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1527 (4th Cir. 1984). These factors are not always weighed equally and not all factors are relevant in every case. *CareFirst of Md., Inc. v. First Care, P.C.*, 434 F.3d 263, 267 (4th Cir. 2006).

The *Pizzeria Uno* factors weigh in favor of finding that defendants' use of plaintiff's trademarks cause confusion. Under the first factor, plaintiff's marks are inherently distinctive and famous. Volkswagen spends millions of dollars in advertising, promoting, and developing plaintiff's trademarks and trade dress, which has resulted in plaintiff's trademarks being well-known and associated with the brand's marketability, reputation, and goodwill. Compl. (Dkt. No.

1) ¶¶ 9, 15. Under the second factor, defendants created exact replicas of plaintiff's trademarks to sell their counterfeit products. *Id.* at ¶¶ 28-29. Under the third factor, defendants' counterfeit products are intended as a replacement for genuine products because many of defendants' products appeared to be stamped with genuine product numbers and the online listings stated that the goods were intended to fit original automobiles. *Id.* at ¶¶ 24, 28-29. Under the sixth factor, defendants' intent is to profit from the sale of counterfeit products by purchasing the counterfeit goods at a cheap price and then selling them at a significantly lower price than genuine products. *Id.* at ¶ 24. Additionally, defendants were selling these products by the thousands on internet marketplaces, such as eBay. *Id.* As plaintiff correctly states, "[t]he only reasonable conclusion is that [defendants] are engaging in these activities to make a profit by undercutting the price of genuine parts." Pls. Br. (Dkt. No. 59) 14. Lastly, under the seventh factor, there is substantial evidence of consumer confusion.

Accordingly, the undersigned recommends a finding that defendants committed Trademark Infringement and Counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

### A.    Plaintiff's Claim for False Designation of Origin (Count II)

Plaintiff further alleges defendants committed False Designation of Origin under Section 43 of the Lanham Act, 15 U.S.C. § 1125(a), for promoting, marketing, offering for sale, and sale of counterfeit products that created a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with plaintiff or the origin, sponsorship, or approval of defendants' counterfeit products. Compl. (Dkt. No. 1) ¶¶ 58-60. A party is liable for false designation of origin if the use of the mark "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." *See* 15 U.S.C. § 1225(a)(1)(A). The elements of a violation of this section are three-fold: "(1) the alleged violator must employ a false designation;

11

(2) the false designation must deceive as to origin, ownership or sponsorship; and (3) the plaintiff must believe that 'he or she is or is likely to be damaged by such [an] act.'" *Am. Online v. IMS*, 24 F. Supp. 2d 548, 551 (E.D. Va. 1998).

As stated above, defendants have employed a false designation, and the false designation is deceiving as to origin, ownership, or sponsorship. Moreover, the false designation is likely to cause damage to plaintiff because defendants' use of plaintiff's trademarks in connection with the advertising, distribution, offering for sale, and sale of counterfeit products, including the sale of products in the United States, including Virginia, is likely to cause and has caused confusion, mistake, and deception by and among consumers" which has caused irreparable harm to plaintiff's reputation and the goodwill of the VW brands. Compl. (Dkt. No. 1) ¶¶ 34, 51.

Accordingly, the undersigned recommends a finding that defendants committed False Designation of Origin under Section 43 of the Lanham Act, 15 U.S.C. § 1125(a).

## A.  Plaintiff's Claim for Trademark Dilution (Count III)

Plaintiff lastly alleges defendants committed Trademark Dilution under Section 43 of the Lanham Act, 15 U.S.C. § 1125(c), for willfully and intentionally using plaintiff's trademarks in connection with the advertisement, promotion, and sale of defendants' products. Compl. (Dkt. No. 1) ¶¶ 60-67. The Lanham Act provides that the owner of a famous, distinctive mark "shall be entitled to an injunction against another person" who uses the mark in a way "that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark…." 15 U.S.C. § 1125(c)(1). A party establishes a dilution claim by showing: "(1) the ownership of a distinctive mark; and (2) a likelihood of dilution." *Am. Online*, 24 F. Supp. 2d at 552 (quoting *Hormel Foods Corp. v. Jim Henson Prods., Inc.*, 73 F.3d 497, 506 (2d Cir. 1996)). As stated above, plaintiff is the owner of the distinctive and famous trademarks. "The distinctive trademarks of "symbolize the brands' marketability, reputation, and goodwill. Compl. (Dkt. No. 1) ¶ 9. Accordingly, there is a likelihood of dilution because defendants

12

have been selling thousands of counterfeit lower-quality products. *Id.* at ¶¶ 28-29; *see also Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 154, 163 (2010) ("[Trademark] law thereby 'encourage[s] the production of quality products,'…and simultaneously discourages those who hope to sell inferior products by capitalizing on a consumer's inability to quickly evaluate the quality of an item offered for sale.").

Accordingly, the undersigned recommends a finding that defendants committed Trademark Dilution under Section 43 of the Lanham Act, 15 U.S.C. § 1125(c).

## VI.   Requested Relief

Plaintiff seeks relief in the form statutory damages under the Lanham Act and permanent injunctive relief under the Lanham Act.[1] The undersigned considers each of plaintiff's requests for relief in turn below.

### A.    Plaintiff's Claim for Statutory Damages

Plaintiff argues that it is entitled to $2,000,000.00 in statutory damages per mark infringed against each of the defendants. Although a court must assume the well pleaded factual allegations in determining liability in a default judgment, that is not true with respect "to those relating to amount of damages." *JTH Tax, Inc. v.* Smith, 2006 WL 1982762, at *2 (E.D. Va. June 23, 2006). In all circumstances, "a default judgment may not exceed in amount that prayed for in the demand for judgment." *Id.* at *3 (citing to Fed. R. Civ. P. 54(c)). The rationale is that a default judgment cannot be greater than the specific amount sought because the defendant could not have reasonably expected that his damages would exceed that amount. *See In re Genesys Data Technologies, Inc.*, 204 F.3d 124, 132 (4th Cir. 2000).

---

[1]     Although plaintiff sought an award of attorney's fees and costs in the complaint, Compl. (Dkt. No. 1) E, plaintiff has not requested such an award in their motion for default judgment or submitted an affidavit or declaration detailing their attorney's fees and costs.

As an alternative remedy to actual damages, a plaintiff may elect to recover an award of statutory damages. Under the Lanham Act, the court "has wide discretion to determine an appropriate award of statutory damages." *Mya Saray, LLC v. Al-Amir*, 831 F. Supp. 2d 922, 941 (E.D. Va. 2011). For willful use of a counterfeit mark, the defendant may be assessed statutory damages of up to $2,000,000.00 per mark. 15 U.S.C. § 1117(c). "Infringement is willful if a defendant has knowledge that its conduct represented infringement or recklessly disregarded the possibility." *Mya Saray*, 831 F. Supp. 2d at 941 (internal citations omitted).  Plaintiff argues that because defendants willfully used plaintiff's trademarks to sell counterfeit goods, they are entitled to statutory damages of $2,000,000.00 per mark. Pls. Br. (Dkt. No. 57) 18-19.

Defendants willfully used counterfeit products to make a profit. First, defendants created exact replicas of plaintiff's trademarks to sell thousands of their counterfeit products. Compl. (Dkt. No. 1) ¶ 20. Second, defendants' counterfeit products were intended as replacements for genuine products because many of defendants' products were stamped with genuine products' numbers and the online listings stated that they were intended to fit original Volkswagen automobiles. Compl. (Dkt. No. 1) ¶¶ 20, 24-25. Moreover, defendants intended to make a profit from their counterfeit products by undercutting the price of genuine products. Accordingly, the undersigned finds defendants' use of plaintiff's trademarks was willful.

The next issue is how many marks plaintiff believes defendants infringed, entitling them to statutory damages for those marks. In the complaint, plaintiff lists a "representative sample of the trademarks" implicated in the instant action, Compl. (Dkt.  No. 1) ¶ 10, but do not articulate which trademarks are specifically being violated. In the prayer for relief, plaintiff sought an award for "statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of [p]laintiffs' [t]rademarks." *Id.* at D. In plaintiff's briefing for

14

its motion for default judgment, plaintiff requested "an award of $2,000,000 per mark infringed" as part of its "ongoing efforts to combat trademark infringement" and "to deter other individuals or corporations from infringing" its marks. Pls. Br. (Dkt. No. 57) 19. Accordingly, the undersigned recommends a finding of $2,000,000.00 in statutory damages for, at least, one counterfeit mark to repair the harm done to plaintiff and to dissuade defendants and others from partaking in such willful counterfeit use in the future.

### B. Injunctive Relief under the Lanham Act

Plaintiff also seeks a permanent injunction enjoining defendants from infringing or otherwise violating plaintiff's registered trademark rights "so that [it] can take prompt action against any new online marketplace accounts or websites that are identified, found to be linking to [] [d]efendants, and selling counterfeit products." Br. (Dkt. No. 59) 15. This Court previously granted plaintiff's TRO finding that (1) plaintiff will be irreparably harmed absent a TRO because defendants would have the incentive and capacity to transfer their assets from any accounts within the United States, depriving plaintiff of the ability to obtain monetary relief; (2) defendants are unlikely to suffer any cognizable harm from the TRO as they would merely be prevented from profiting from past infringement and moving their funds beyond the reach of the Court; (3) plaintiff is likely to succeed on the merits; and (4) the public has an interest in the prohibition of trademark infringement to prevent consumer confusion and deception. Order (Dkt. No. 21) 2-5. The Court also granted plaintiff's request for a preliminary injunction, which requires the same standard as that for granting a TRO. (Dkt. No. 53) 4. For similar reasons, the undersigned finds that a permanent injunction is appropriate here.

Plaintiff further seeks an order requiring PayPal to transfer to plaintiff the assets currently held in defendants' accounts as partial payment of any award of damages. Pls. Br. (Dkt. No. 59).

at 18. "In the absence of such an order, it is likely that [p]laintiff will be left without any effective means by which to collect from [d]efendants any monetary judgment entered by this Court." Pls. *Id.* Accordingly, the undersigned finds such an order appropriate to allow plaintiff to recover their monetary award.

## VII.    Recommendation

For the foregoing reasons, the undersigned recommends:

1) Granting plaintiff's motion for entry of default judgment (Dkt. No. 58);

2) Permanently enjoining defendants from making, using, selling, or offering for sale unauthorized products containing the VW brands trademarks;

3) Entering an award of $2,000,000.00 in statutory damages;

4) Ordering PayPal, Inc. to release to plaintiff the monies currently restrained in defendants' financial accounts as partial payment of the above-identified damages within five (5) business days of the date of a Court Order;

5) Ordering that, until plaintiff have recovered full payments of monies owed to it by any defendants, plaintiff shall have an ongoing authority to serve this Order on PayPal in the event that any new PayPal accounts controlled or operated by defendants are identified. Upon receipt of the Order, PayPal shall within two (2) business days: locate all accounts and funds connected to defendants or defendants' internet stores; restrain and enjoin such accounts or funds that are not U.S. based from transferring or disposing of any money or other of defendants' assets; and release all monies restrained in defendants' PayPal accounts to plaintiff as partial payment of the above-identified damages within ten (10) business days of receipt of the Court's Order.

**VIII.    Notice**

By means of the Court's electronic filing system and by mailing a copy of this Report and Recommendation to defendants at their address for service of process, the parties are notified as follows. Objections to this Report and Recommendation must be filed within fourteen (14) days of service on you of this Report and Recommendation. Failure to file timely objections to this Report and Recommendation waives appellate review of the substance of this Report and Recommendation and waives appellate review of a judgment based on this Report and Recommendation.

/s/
Michael S. Nachmanoff
United States Magistrate Judge

July 10, 2020
Alexandria, Virginia

**APPENDIX A**

| No. | Defendant Name | Defendant eBay ID | PayPal email address |
|---|---|---|---|
| 1 | 桂国 陈 (Gui Guo Chen) | 2018pineapple | chenuiuo02@outlook.com |
| 8 | 子雄 郑 (Zi Xiong Zheng) | autoscandiy | Money@kdscanner.com<br>samzheng2016@126.com<br>autotechDIY@yahoo.com |
| 10 | 修珑 胡 (Hu Xiulong) | beadsmarket | shengwanglei@yahoo.com<br>hallo_schmuck_lei@outlook.com<br>hallo_schmuck_lei@yahoo.com<br>homeshopping_DIY@yahoo.com |
| 11 | 似业 胡 (Shi Ye Hu) | bestobal | ylworldtrading@hotmail.com |
| 13 | 岩岩 蔡 (Yan Yan Tsai) | caiyanyantiger | caiyanyan1980@hotmail.com<br>caiyanyan1980_1@hotmail.com<br>caiyanyan1980_2@hotmail.com |
| 15 | 程 陈 (Cheng Chen) | chengcheng788 | aooqhmhqq80@hotmail.com |
| 16 | 晓芳 冯 (Xiaofang Feng) | cntopstore | 597969631@qq.com |
| 17 | 修珑 胡 (Hu Xiulong) | craftdiyonline | gemstone.beauty2009@gmail.com<br>huangwg@yahoo.com<br>huangwg_0702@outlook.com<br>xiulonghu@outlook.com<br>xiulonghu@yahoo.com<br>gemstone.beauty2009@yahoo.com<br>housweety.services@yahoo.com |
| 19 | 亚磊 马 (Ya Lei Ma) | dbs-store7 | horizon0706@outlook.com |
| 22 | Jingkun Ma | dr.dent1 | only20181009@163.com |
| 23 | 鑫 梁 (Xin Liang) | dreamer-store709 | china_dream_709@yahoo.com.cn<br>china_dream_709@163.com |
| 26 | Alexander Livshits | easy-2buyy1 | marishaalex2307@gmail.com |
| 28 | 华 周 (Hua Zhou) | ec-sells | 76083233@qq.com |
| 29 | 蓉 叶 (Rong Ye) | ecudiagnose | auto2tech@gmail.com<br>autotech@hotmail.com<br>sales@auto2tech.com<br>order@auto2tech.com |
| 30 | Chaolei Ma | edent0810 | 18003835165@163.com |
| 33 | 会 田 (Hui Tian) | feidong256 | longfei236@sina.com |
| 36 | 桂方 李 (Gui Fang Li) | gocardiag | info@itcardiag.com<br>1843265526@qq.com |
| 43 | Ilia Shubny | ivscorpil | muramez@mail.ru<br>muramez90@gmail.com<br>ivscorp2017@gmail.com |

| No. | Defendant Name | Defendant eBay ID | PayPal email address |
|---|---|---|---|

| 44 | 修珑 胡 (Hu Xiulong) | je-aime-perles | beads-online@live.com<br>crafts-home@outlook.com<br>hellogemstone_wei@yahoo.com<br>jewelry-diy@outlook.com<br>robbie.wei@yahoo.com<br>xiaoduo.pan@outlook.com<br>hellogemstone@gmail.com<br>qizanwei@yahoo.com<br>robbie.wei@panduo.com.cn |
|---|---|---|---|
| 46 | 岩岩 蔡 (Yan Yan Tsai) | ledlightcarparts | feiyanled@hotmail.com |
| 47 | 晓云 钟 (Xiaoyun Zhong) | lind_chen1 | susan123abc@163.com |
| 50 | Pingyan Li | mingtge | lipybj@hotmail.com |
| 53 | Jian Jun Wei | niujunjun98 | laoweijiashenvo@outlook.com |
| 54 | Jinli Ding | promall | 2189647685@qq.com |
| 56 | 媛媛 张 (Yuanyuan Zhang) | seniors_203 | seniors203@outlook.com |
| 57 | 绍雄 戴 (Shao Xiong) | sincereobd2 | daiobd@outlook.com<br>sincereobd2@outlook.com<br>sincereobd@outlook.com |
| 58 | 佰香 王 (Bai Xiang Wang) | sinosells699 | 844314000@qq.com<br>info@ecutool.us<br>wbaixiang@yahoo.com |
| 59 | Hailan Li | smartgo-gps-wholesale | tingyumanbu317@163.com |
| 60 | Jian Le Zhao | strength_simone | 1755791556@qq.com |
| 63 | Ou Ping Su | ucartool2015 | chinacathy@163.com |
| 65 | Azhou Chen | vehiclegenius | autoolboxgina@hotmail.com<br>shzwz@126.com |
| 66 | 明和 黄 (Meiwa Ki) | xiaoxiaowei17 | huangminghe12@hotmail.com |
| 69 | 国臣 张 (Guochen Zhang) | yf_home | yf111aaa@126.com<br>airhomepay@126.com<br>easily_pay@126.com<br>hkpayhome@126.com<br>yf_home_pay@126.com |
| 70 | 媛媛 张 (Yuanyuan Zhang) | yfmotor | motorknight2018@outlook.com |
| 71 | Zuqiu He | yiou-2017 | myangelok@qq.com |
| 72 | Yang Zhang | ywssg515 | tzlangm@hotmail.com |
| 74 | 会 邓 (Hui Deng) | zeus_tech | chinamaster02@hotmail.com<br>chinatool93@gmail.com<br>chinatool93@hotmail.com<br>mandydeng49@yeah.net |
| 76 | 强华 赵 (Qianghua Zhao) | zykerstore | zyker2017@163.com |
| 77 | Qing Zhu | hksinc (zhuqingadaf) | hksincczq@outlook.com<br>hksincc@gmail.com |

| No. | Defendant Name | Defendant eBay ID | PayPal email address |
|-----|----------------|-------------------|----------------------|
| **79** | 离军 王 (Li Jun Wang) | july6292012 | july6292012@hotmail.com |
| **81** | Qingqing Luo | besttool2019 | rr@jebolist.com |
| **83** | 景 王 (Wang Jing) | wxystore | liuzhigui2014@outlook.com |